UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN PODKULSKI, B53394 | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:24-cv-06594 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| ANTHONY WILLS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Steven Podkulski ("Petitioner") brings his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner asks the Court to vacate his 2019 conviction for the first-degree murder of Jennifer Boyd ("Boyd") based on ineffective assistance of counsel, admission of prejudicial bad acts evidence, judicial bias, malicious prosecution, witness interference, and mishandling of evidence. Respondent argues the Court should dismiss Petitioner's claims based on procedural default. For the reasons stated herein, the Court determines two of Petitioner's claims are not procedurally defaulted and require an answer from Respondent, on the merits.

**Background**

Unless otherwise noted, the following facts are drawn from the state appellate court opinion affirming Petitioner's convictions and the state appellate court opinion dismissing Petitioner's postconviction petition. *People v. Podkulski,* No. 1-19-2149, 2022 WL 1744131 (Ill. App. Ct. May 31, 2022); *People v. Podkulski*, No. 1-21-1270, 2024 WL 166912 (Ill. App. Ct. Jan. 16, 2024). *See Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012) ("[t]he state court's factual determinations are entitled to a presumption of correctness.").

**A. Trial**

At trial, the government presented testimony from James Burke ("Burke") the responding officer, Steven Lindich ("Lindich"), lieutenant of the Bedford Park Police Department, James Goble ("Goble"), who was at the scene of the crime with Petitioner and who purportedly committed burglaries with Petitioner on a regular basis, Lauren Munch ("Munch"), Petitioner's girlfriend at the time of Boyd's death, Diane Bahr ("Bahr"), girlfriend of Petitioner's friend at the time of Boyd's death, and Michael Sias[1] ("Sias").

Bolingbrook police officer, Burke, testified to the following facts. On August 3, 2002, Burke responded to a call at Bedford Park Public Storage ("Public Storage"). When he arrived at the scene, an unidentified witness told Burke that they heard a "banging noise, and "possibly help, help, help," coming from inside a locker. Burke identified the locker and found Boyd, the manager of the Public Storage facility, laying in a pool of blood. Boyd was pronounced dead at the scene.

Witness Goble, who received a proffer agreement prior to testifying, testified that he regularly committed burglaries with Petitioner throughout 2002 and stored the "proceeds" in Public Storage units. He further testified that on August 3, 2002, Goble and Petitioner drove to Public Storage in Sterling Estates, Illinois, accompanied by Kimberly Williams ("Williams"), Munch, and Nancy Abeyta.[2] Petitioner and Goble entered the Public Storage office, and after ten minutes, Goble testified that he returned to the car. A couple minutes later, Goble testified that he saw the Petitioner leave the office with the victim, Boyd. Five to ten minutes after that, Goble testified that he saw Petitioner leave the locker area, alone, covered with blood. Later that day, Petitioner called Goble and borrowed

[1] The Court presumes that Michael Sias is an acquaintance of Petitioner. His exact relationship to Petitioner is unclear based on the record.

[2] The Court presumes that Kimberly Williams and Nancy Abeyta are acquaintances of Petitioner. Their exact relationship to Petitioner is unclear based on the record.

clothes from him.[3] When Petitioner arrived[4] to meet Goble for the change of clothes, he burned his blood-covered clothes in a grill. Goble additionally testified that three days later, Petitioner told Goble, "that he decided he was going to burglarize the place, went to push [Boyd] into the locker, and she put up a fight and he killed her by stabbing her with a knife." Goble finally testified that Petitioner told him he threw his Letherman knife, the presumed murder weapon, into a river.

Witness Munch, who also signed a proffer agreement prior to testifying, stated that on August 3, 2002, she went with Petitioner to Public Storage but stated that Goble and Abeyta arrived in a separate vehicle. Munch stayed in the vehicle when the Petitioner and Goble went into the office to rent a storage unit. She further testified that Petitioner and Goble left the office with a woman and walked towards the storage lockers, contradicting Goble's testimony that Petitioner was alone with Boyd. Munch further testified that soon after Petitioner and Goble went to the storage locker, she then heard a "a female kid-like scream." She then saw Goble and Petitioner run back towards their vehicles. According to Munch, Petitioner was "very agitated" and said "[w]e need to get the hell out of here." When they arrived back to Sterling Estates, Munch testified that Petitioner and Goble burned Petitioner's clothes and the Leatherman knife. Munch ended her relationship with Petitioner a few days later. In response, they subsequently drove to a storage locker in Plainview, Illinois where Petitioner told Munch to "remove her belongings from his storage locker." When they arrived, Munch testified that Petitioner shoved her inside a trailer, turned on a propane tank, and yelled that he "would not help *** because [she] would be dead just like the other girl in a matter of minutes." She was eventually released by Petitioner, and following this event, Munch testified that Petitioner sent her letters "threatening to kill [her] and any offspring [she] might have."

---

[3] Based on the record, it is unclear where Petitioner and Goble met.

[4] Based on the record, the Court presumes that Sterling Estates was the residence of Kimberly Williams.

Witness Bahr testified that her ex-boyfriend, Matthew Christianson ("Christianson") and Petitioner were friends. Bahr testified that, around September of 2002, she overheard Petitioner tell Christianson that he "messed up" by killing a woman at a storage unit because she surprised him," Bahr testified that Petitioner told Christianson that the woman worked at a storage facility, that he "shoved" her inside the unit, and stabbed her to "shut her up." According to Bahr, Petitioner said he then wiped the knife on her pants and put it in his pocket.

Witness Sias testified that on January 4, 2017,[5] Petitioner called Sias from Cook County jail and said that "he would swallow metal and injure himself in order to be taken to Stroger [Hospital]," in Chicago. Petitioner requested that Sias bring him bags of heroin and tobacco when he arrived at the hospital. Sias testified that Petitioner did in fact swallow metal to be taken to Stroger. The next day, on January 5, 2017, Mario Ellis, an acquaintance of Sias who was hospitalized in the same room as Petitioner, called Sias and told him that Petitioner was his roommate and that he was requesting the package from Sias. Sias assembled the package and passed it to Petitioner at Stroger Hospital. Sias testified, that when he gave Petitioner the package, Petitioner stated "[t]hat girl got what she had coming and they will never convict [him] of it."

After the government rested, Petitioner's counsel rebutted the government's witnesses. To impeach Munch on cross-examination, Petitioner's defense counsel published part of Munch's grand jury testimony where she stated that, "she, defendant, and Goble traveled to Public Storage," contradicting her testimony at trial that she drove separately from Goble. In response, Munch testified that her failure to initially tell the grand jury about the separate vehicles was because of the "traumatic nature of the event and the time that has passed since the murder." Petitioner's defense counsel then

---

[5] The length of time between the crime and testimony arises from the case's investigative timeline. Until 2013, when Bedford Park Police Sergeant Andrew Smuskiewicz reopened the investigation into Boyd's murder, it was considered a cold case. *See People v. Podkulski*, 2022 IL App (1st) 192149-U, ¶ 28.

asked Munch about an email she wrote to Bedford Park Police Department on May 31, 2017, where she stated that she overheard Goble and Abeyta arguing and specifically heard Goble admit, "I just killed someone. If they find out I am going to prison," calling Petitioner's sole involvement in Boyd's death, into question.

Petitioner's counsel also objected to the state's publication of his phone calls with Sias, including Petitioner's plan to swallow metal and be transported to Stroger Hospital. The Court allowed their publication over defense's objection. Petitioner's counsel emphasized that the phone conversations notably did ***not*** include mention of the Public Storage incident or Boyd, which Petitioner's counsel argued called Sias's testimony that Petitioner told him "[t]hat girl got what she had coming and they will never convict [him] of it," into question. In closing, Petitioner's defense counsel argued that the state did not meet its burden because it presented no physical evidence and presented witnesses that were all not credible.

After hearing the evidence, the court found Petitioner guilty on October 3, 2019.

**B. Post-Trial Motion Practice**

Following trial, Petitioner's defense counsel filed posttrial motions, including a motion for acquittal. Defense counsel argued that the state failed to prove that Petitioner killed Boyd and that the testimony given was "impeached, bias, and suspicious." Defense counsel also filed a motion for a new trial, arguing that the court erred in admitting the following "bad acts" evidence: (1) that Petitioner threatened to kill witness Munch; (2) that Petitioner and witness Goble committed burglaries and kept the items in the storage facilities; and (3) that Sias visited the Petitioner in the hospital, handed him several bags of drugs, and Petitioner in response said, "[t]hat girl got what she had coming to her. They will never be able to convict me." The court denied these motions by Petitioner's defense counsel.

Prior to argument on the post-trial motions filed by his counsel, Petitioner also filed a *pro se* posttrial motion alleging that his defense counsel was ineffective because he failed to investigate exonerating evidence, and failed to impeach witnesses Munch, Goble, Bahr, and Sias. The court dismissed Petitioner's ineffective assistance claims, finding that his defense counsel's behavior was due to trial strategy or "belied by the record." The court ultimately sentenced Petitioner to 45 years in prison. Petitioner filed a motion to reconsider his sentence, which the court further denied.

**C. Direct Appeal**

On direct appeal, following the denial of his posttrial motion, Petitioner raised two issues: (1) that the trial court abused its discretion and violated Illinois evidentiary rules by admitting Sias's testimony and (2), that his defense counsel was ineffective for not impeaching Munch with her prior grand jury testimony. The Illinois Appellate Court determined that Sias's testimony was relevant to "introduce context for how [Petitioner] came to make his inculpatory statement to Sias." As to Petitioner's claims of ineffective assistance of his trial counsel for failing to impeach Munch, the appellate court declined to adjudicate the claim, determining the record was insufficient on the issue. Specifically, the appellate court explained, because no part of Munch's grand jury testimony was entered into evidence during trial (as defense counsel requested), and because there was no grand jury testimony attached to Petitioner's *pro se* posttrial motion, Petitioner's ineffective assistance claim was based on information outside of the record and better suited for "collateral proceedings." Petitioner attempted to appeal the dismissal to the Illinois State Supreme Court. The Illinois Supreme Court denied Petitioner's leave to appeal on September 8, 2022. *People v. Podkulski*, 197 N.E.3d 1111 (Ill. 2022).

On July 7, 2021, while Petitioner's direct appeal was pending, defendant filed a *pro se* postconviction petition, arguing ineffective assistance of trial counsel under the Post-Conviction Hearing Act. 725 ILL. COMP. STAT. 5/122-1 (2020). In his postconviction petition, Petitioner argued that his trial counsel should have called Williams as a witness, who would have testified that she did

not know Munch, did not accompany her to Public Storage, and that she did not have a firepit on her property where Munch claims she, Petitioner, Goble, and Abeyta burned Petitioner's clothes and knife. Petitioner further stated that Munch was motivated to lie, and told "detectives" (mistakenly referred to instead of the "grand jury") that she saw Goble accompany Boyd, not Goble *and* Petitioner. Petitioner did not attach any affidavit to his petition to support Williams' purported testimony, explaining that he was unable to do so because he was "incarcerated, indigent, and unable to locate witnesses without assistance" from the court. He further asserted that each attorney he requested supporting documentation from denied or ignored his request.

On September 2, 2021, the circuit court entered a summary dismissal of Petitioner's *pro se* postconviction petition for failure to state a claim, determining his allegations were conclusory because they were not supported with evidence, records, or affidavits. *People v. Podkulski*, No. 1-21-1270, 2024 WL 166912, at *4 (Ill. App. Ct. 2024). The court stated, instead of providing the necessary materials to support his claims, Petitioner resorted to "to simply blam[ing] all of the attorneys who represented him at one stage or another." *Id.* Petitioner appealed the summary dismissal to the Illinois Appellate Court, again arguing (1) his trial counsel was ineffective for not presenting Williams' testimony, which would have undermined the accuracy and credibility of Munch's testimony; and (2) that trial counsel was ineffective for failing to impeach Munch with inconsistent statements she made to the grand jury.

The appellate court affirmed the circuit court's dismissal, determining that Petitioner did not produce documentation showing that Williams would have testified in the manner he alleged and that the petition did not state a claim that counsel was ineffective for "failing to impeach Munch with her statements to the grand jury." Specifically, the court declined to engage with the merits of Petitioner's second claim, because her original petition referenced her inconsistent statements to "detectives," rather than the "grand jury" Petitioner referenced in his appeal. *See id.* at *6. The appellate court

determined any arguments about her "grand jury" statements were not included in the original postconviction petition, and thus waived and improperly before the appellate court. *See id.*

Following the state appellate court's affirmation, Petitioner attempted to appeal the dismissal to the Illinois State Supreme Court. On March 27, 2024, the state supreme court denied Petitioner's leave to appeal. *People v. Podkulski*, 232 N.E.3d 13 (Ill. 2024). Petitioner then attempted to appeal his dismissal to the Supreme Court of the United States, which denied certiorari on October 7, 2024. *Podkulski v. Illinois*, No. 23-7475, 2024 WL 166912 (U.S. 2024).

### D. Present Habeas Petition

On July 29, 2024, Petitioner timely filed the present § 2254 petition, alleging a violation of his Sixth Amendment right to effective assistance of counsel. Petitioner specifically claims the following: (1) trial counsel was ineffective for failing to put on a defense, impeach witnesses, and obtain documents; (2) the trial judge was biased; (3) the trial court erred in admitting bad acts evidence that Petitioner threatened to kill Munch, (4) that Petitioner committed burglaries with Goble and kept the proceedings in storage facilities, (5) that Sias delivered narcotics to petitioner while petitioner was hospitalized; and (6) that the prosecutor improperly emphasized bad acts evidence and tampered with witnesses and evidence. Dkt. 15 at *5.

## Legal Standard

Under 28 U.S.C. § 2254(a), a federal court may consider an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Relevant here, prior to determining the merits of Petitioner's claims, the Court must determine if any of the claims in a habeas petition were defaulted. The procedural default doctrine will preclude a federal court from reaching the merits of a habeas claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and

independent state-law procedural grounds; or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Thus, when the habeas petitioner has failed to fairly present to the state courts the claim on which they seek relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *Id.*

Procedural default may be excused, however, "if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). "Under this cause-and-prejudice test, a cause is defined as ... an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *Id.* (quotation marks omitted). "Prejudice means, an error which so infected the entire trial that the resulting conviction violates due process." *Id.*

**Discussion**

Respondent asserts that Petitioner procedurally defaulted all of his claims by failing to raise them through "one complete round of state court review." Dkt. 15 at *6. Specifically, Respondent argues that Petitioner's claims that (1) the trial judge was biased; (2) the trial court erred in admitting bad acts evidence that Petitioner threatened to kill Munch, committed burglaries with Goble and kept the proceedings in storage facilities, and that Sias delivered narcotics to petitioner while petitioner was hospitalized; and (3) that the prosecutor improperly emphasized bad acts evidence, and tampered with witnesses and evidence, were not fully presented to the state courts. Respondent further argues that Petitioner's ineffective assistance of counsel claims pertaining to his attorney's failure to impeach

much or call Williams were not properly raised in his petition for leave to appeal his postconviction petition. *See id.* at *7–9.

In his reply, Petitioner focuses his argument on his ineffective assistance of counsel claims. Dkt. 60 at *1. Though Petitioner briefly notes that he is not waiving his other claims, *id.*, without developed, substantive legal argument, such a cursory statement is insufficient to preserve the unaddressed claims. *See Kramer v. Banc of Am. Secs.*, LLC, 355 F.3d 961, 964 n. 1 (7th Cir. 2004); *see also United States v. Givens*, No. 19-c-1696, 2022 WL 4051094, at *2, n.3 (N.D. Ill. Sep. 2, 2022) (Lee, J.) (applying this same framework in a habeas context stating that "it is not enough to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the stature for the argument, and put flesh on its bones."). Because Petitioner did not develop any argument for his claims that the trial judge was biased; that the trial court erred in admitting bad acts evidence that Petitioner threatened to kill Munch, committed burglaries with Goble and kept the proceedings in storage facilities, and that Sias delivered narcotics to petitioner while petitioner was hospitalized; and that the prosecutor improperly emphasized bad acts evidence and tampered with witnesses and evidence, the Court considers all those claims waived. Accordingly, only two claims require a procedural default analysis: (1) Petitioner's claim that his defense counsel was ineffective for failing to impeach witness Munch; and (2) Petitioner's claim that his defense counsel was ineffective for failing to call Williams as a witness. Dkt. 60 at *1.

### A. Procedural Default Analysis

#### 1. *Failure to Impeach Munch*

Respondent argues Petitioner's claim that his counsel was ineffective for failing to impeach Munch was procedurally defaulted because he did not argue this claim in his petition for leave to appeal his postconviction petition, but instead only raised the issue during his direct appeal. Dkt. 15 at *7–8. In response to Respondent, Petitioner clarifies that he did, in fact, raise this issue in his

postconviction petition, but instead of referencing Munch's inconsistent statements in front of the "grand jury," Petitioner mistakenly referenced inconsistent statements in front of "detectives." *See* Dkt. 60 at *5. Petitioner argues, because he used the same set of facts in his direct appeal as he did in his postconviction appeal, and because he raised the same issues through a full round of state-court review, his claim was not defaulted. *Id.* at *6.

Upon review of the record, the Court determines Petitioner's claim that his counsel was ineffective for failing to impeach Munch, was not defaulted. As an initial matter, the Court acknowledges the discrepancy in phrasing the Respondent relies on to conclude that Petitioner defaulted this claim. While petitioner mistakenly claims that Munch provided inconsistent statements to the "detectives" in his postconviction petition, and properly argues she provided these inconsistent statements to the "grand jury" in his postconviction appeal process, the core substance of the claims are based on the same facts. The Seventh Circuit requires courts to construe *pro se* habeas and postconviction petitions liberally. *See Frazier v. Varga*, 843 F.3d 258, 262–63 (7th Cir. 2016). Further, the Seventh Circuit has held that "modifying" or "refining" a claim between proceedings does not constitute forfeiture as long as the core substance of the claim remains the same. *Small v. Woods*, 146 F.4th 590, 597 (7th Cir. 2025). In his petition before the circuit court, Petitioner asserted "trial counsel was ineffective for failing to impeach Munch" with her statements to "detectives." *See People v. Podkulski*, 2024 WL 166912 at *6. In his appeal, however, when petitioner reverted to the correct language, arguing that Munch's inconsistent statements were made in front of the "grand jury," not to law enforcement ("detectives"), the court determined this claim was never in front of the trial court, even though it was based on the same set of facts regarding Munch's inconsistent statement. In the present instance, such a determination was improper. In *Boyko v. Parke*, for example, the Seventh Circuit held that an ineffective assistance claim, when reformulated, is not defaulted where courts are resolving the same ultimate question. 259 F.3d 781, 789 (7th Cir. 2001) (citing *Wilks v. Israel*, 627

F.2d 32, 38 (7th Cir. 1980) "[M]ere variations in the same claim rather than a different legal theory will not preclude exhaustion."). Like here, Petitioner's mistaken use of the phrase "detectives" instead of "grand jury" did not result in a default of his claim since the appellate court was tasked with resolving the same ultimate question the circuit court resolved. Like *Boyko*, Petitioner's mistake in identifying the location where Munch's inconsistent statements were made, does not transform the underlying claim: that his defense counsel did not impeach Munch based on a specific inconsistent statement, whether that inconsistent statement was made to detectives or a grand jury.

Having determined Petitioner presented the same ultimate claim to the trial court and appellate court, the Court now outlines how that claim proceeded through a full round of state-court review. Petitioner included this claim in his July 7, 2021, *pro se* postconviction petition. After the claim was dismissed by the circuit court for failure to state a claim, Petitioner, appealed the dismissal to the Illinois Appellate Court. When Petitioner appealed this claim to the appellate court, he corrected the language in his claim from "detectives" to "grand jury" (which the Court now determines is an identical claim). When the Illinois Appellate Court affirmed the lower court's ruling, Petitioner then attempted to appeal this claim to the Illinois Supreme Court, an appeal that was later denied. *People v. Podkulski*, 232 N.E.3d 13 (Ill. 2024). As such, this claim was presented through a full round of state court review, and therefore is not procedurally defaulted.

2. *Failure to Call Williams*

Respondent next argues that Petitioner's claim that his counsel was ineffective for failing to call Witness Williams, was defaulted since Petitioner failed to support his claim with necessary affidavits or adequately explain his failure to do so. Dkt. 15 at *4. Petitioner, in response, argues that his failure to comply with certain state procedural rules should be excused. *Id.* at *2. Specifically, Petitioner argues that his inability to provide an affidavit for Williams's testimony was a result of the

fact that he was "incarcerated, indigent, and unable to locate witnesses without assistance from the court." *Id.* Petitioner argues that he made an effort to obtain these necessary documents.

Petitioner's second claim, regarding defense counsel's failure to call Williams as a witness, also was not defaulted. On September 2, 2021, Petitioner raised this claim to the trial court. The trial court determined that Petitioner's claim was without merit because he did include evidence, records, or affidavits by Williams. *People v. Podkulski*, No. 1-21-1270, 2024 WL 166912, at *6 (Ill. App. Ct. 2024). On appeal, Petitioner filed an affidavit attesting explained that he made sincere efforts to obtain any necessary documents. On January 16, 2024, the appellate court affirmed the trial court's decision. *Id.* On March 27, 2024, the state supreme court denied Petitioner's leave to appeal. *People v. Podkulski*, 232 N.E.3d 13 (Ill. 2024). While Petitioner did not have the resources to provide supporting documentation in his initial postconviction proceedings, he never waived his claim and brought it through a full round of state-court review. As such, because Petitioner's claim that his counsel was ineffective for failing to call Williams was presented in a full round of state court review, it is not procedurally defaulted.

Having determined Petitioner's claims were not procedurally defaulted, the Court now orders Respondent to answer petitioner's remaining two claims on the merits within 30 days.

**Conclusion**

For these reasons, the Court determines Petitioner's claims that his counsel was ineffective for failing to impeach Munch and failing to call Williams were not procedurally defaulted. Respondent is ordered to answer these two remaining claims, on the merits, within 30 days.

IT IS SO ORDERED.

Date: 8/19/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge